IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED STEEL RECOVERY, LLC, | ) |
| Plaintiff, | ) 2:12-cv-01004-GEB-DAD |
| | ) |
| v. | ) CLAIM CONSTRUCTION ORDER |
| | ) |
| X-BODY EQUIPMENT, INC., PALADIN | ) |
| BRANDS GROUP, INC., and JEWELL | ) |
| ATTACHMENTS, LLC, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This order issues following consideration of each party's briefs and argument concerning the meaning of nine claim terms in Plaintiff Advanced Steel Recovery, LLC's ("Plaintiff" or "ASR") U.S. Patent No. 8,061,950 ("the '950 Patent"), which is titled "Container Packer System and Method."

Plaintiff alleges that Defendants infringe "one or more claims of the '950 [P]atent . . . [with their] container packer systems, including the Acculoader container loader." (Complaint ¶¶ 11, 20; ECF No. 1.) Defendants filed answers containing non-infringement and invalidity affirmative defenses, and counterclaims of non-infringement and invalidity of both the '950 Patent and U.S. Patent No. 7,744,330 ("the '330 Patent"), of which the '950 Patent is a continuation. (Def. X-Body Equip., Inc.'s Answer ¶¶ 30-31, 55-62, ECF No. 9; Def. Jewell Attachments, LLC's Answer ¶¶ 30-31, 55-62, ECF No. 16.)

//

# I. TECHNOLOGY BACKGROUND

The '950 Patent's background section describes the patented technology as follows: "The present invention relates generally to handling waste and other bulk materials, and in particular to a system and method for packing a container with bulk material for transport." ('950 Patent col. 1:15–18; ECF No. 26-2.) "Heretofore there has not been available a bulk material handling system or method with the advantages and features of the present invention, including a container packer for receiving the material and transferring it to a container or other vessel for transport." (Id. col. 1:47–51.) The '950 Patent describes its container packer system as including:

> a transfer base, which receives a container packer adapted for movement longitudinally between retracted and extended positions with respect to the transfer base. The transfer base includes a power subsystem with a motor or engine driving an hydraulic pump for powering hydraulic piston-and-cylinder units of the system, including a container packer piston-and-cylinder unit for hydraulically extending and retracting the container packer. The container packer generally encloses an interior adapted for receiving bulk material for transfer to a transport container, which can comprise a standard shipping container, a trailer or some other bulk material receptacle. The container packer includes a push blade assembly longitudinally movably mounted in its interior and actuated by a push blade piston-and-cylinder unit.

(Id. col. 1:55–2:3.) The '950 Patent describes its container packer method as follows:

> [A] container packer method includes the steps of loading the interior of the container packer with bulk material in its retracted position on the transfer base, locating a transport container in alignment and behind the transfer base, hydraulically inserting part of the container packer into the transport container, hydraulically emptying the container packer of bulk material into the transport container with the push blade assembly, retracting the push blade assembly within

the container packer and extracting the container
packer onto the transfer base.

(Id. col. 2:4-13.)

## II. LEGAL STANDARD

"It is a 'bedrock principle' of patent law that 'the claims of
a patent define the invention to which the patentee is entitled the
right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed.
Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water
Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). "There is
a heavy presumption that claim terms are to be given their ordinary and
customary meaning." Aventis Pharma. Inc. v. Amino Chems. Ltd., 715 F.3d
1363, 1373 (Fed. Cir. 2013) (citing Phillips, 415 F.3d at 1312-13;
Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir.
1996)).

> Claims, however, must be construed in light of the
> appropriate context in which the claim term is
> used. The written description and other parts of
> the specification, for example, may shed contextual
> light on the plain and ordinary meaning; however,
> they cannot be used to narrow a claim term to
> deviate from the plain and ordinary meaning unless
> the inventor acted as his own lexicographer or
> intentionally disclaimed or disavowed claim scope.
> The prosecution history too, as part of the
> intrinsic record, has an important role in claim
> construction by supplying context to the claim
> language. While the prosecution history lacks the
> clarity of the specification and thus is less
> useful for claim construction purposes, it still
> provides evidence of how the inventor intended the
> term to be construed.

Id. (citations omitted) (internal quotation marks omitted).

"We begin our claim construction analysis . . . with the words
of the claim. The claim language defines the bounds of claim scope."
Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1324 (Fed. Cir.
2002). "[T]he ordinary meaning must be determined from the standpoint of
a person of ordinary skill in the relevant art." Id. at 1325. "A court

construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention." Innova/Pure Water, Inc., 381 F.3d at 1116.

> The person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art. The actual inventor's skill is not determinative. Factors that may be considered in determining level of skill include: type of problems encountered in art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field. Not all such factors may be present in every case, and one or more of them may predominate.

Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 962-63 (Fed. Cir. 1986) (footnote omitted); see also Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1347 (Fed. Cir. 2000) (stating when fashioning the hypothetical construct of a person of ordinary skill in the art a court should consider, inter alia, "the educational level of the inventor; the type of problems encountered in the art; . . . the sophistication of the technology; and the educational level of workers in the field"). "Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field." Multiform Desiccants, Inc. v. Medzam Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." Phillips, 415 F.3d at 1321.

"In construing a claim term, . . . [i]f the claim term has a plain and ordinary meaning, [the] inquiry ends." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1361 (Fed. Cir. 2013) (citing Vitronics Corp., 90 F.3d at 1582). "In some cases,

the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Phillips, 415 F.3d at 1314 (citing Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). Courts "must consider the word that the inventor actually chose and use the definitions of that term that are consistent with the written description," rather than replacing the inventor's words with synonyms. Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1374 (Fed. Cir. 2004) (holding that district court's claim construction that replaced a claim term with its synonym was improper).

Further, "a sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems-especially easy ones . . . -is properly left to the trier of fact." Acumed LLC v. Stryker Corp., 483 F.3d 800, 806 (Fed. Cir. 2007).

> Rather, claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.

O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1362 (Fed. Cir. 2008). "'[D]etermining the meaning and scope of the patent claims' is a question that 'the court, not the jury, must resolve' . . . ." Function Media, L.L.C. v. Google, Inc., 708 F.3d 1310, 1326 (2013) (quoting O2 Micro Int'l Ltd., 521 F.3d at 1360).

In this case, "the terminology utilized in the . . . patent claims seems capable of being understood by a person of average intelligence [and therefore, t]he configuration of the hypothetical

person of ordinary skill in the art [has] less significance." <u>Piersons v. Quality Archery Designs, Inc.</u>, No. 3:06-CV-0408 (TJM/DEP), 2007 WL 4995439, at *6 (N.D.N.Y. Oct. 22, 2007).

"[I]n interpreting [a claim term], the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification, and, if in evidence, the prosecution history." <u>Vitronics Corp.</u>, 90 F.3d at 1582. "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms . . . [, and] the context in which a claim term is used in the asserted claim can be highly instructive." <u>Phillips</u>, 415 F.3d at 1314 (citations omitted) (citing <u>Vitronics Corp.</u>, 90 F.3d at 1582; <u>ACTV, Inc. v. Walt Disney Co.</u>, 346 F.3d 1082, 1088 (Fed. Cir. 2003)). "[T]he specification is always highly relevant to the claim construction analysis[;] . . . it is the single best guide to the meaning of a disputed term." <u>Vitronics Corp.</u>, 90 F.3d at 1582.

> [T]he patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before. Placed in that context, it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation.

<u>LizardTech, Inc. v. Earth Resource Mapping, PTY, Inc.</u>, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (citation omitted) (citing <u>In re GPAC Inc.</u>, 57 F.3d 1573, 1579 (Fed. Cir. 1995)). "While claim terms are understood in light of the specification, a claim construction must not import limitations from the specification into the claims." <u>Deere & Co. v. Bush Hog, LLC</u>, 703 F.3d 1349, 1354 (Fed. Cir. 2012) (citing <u>Phillips</u>, 415 F.3d at 1312-13). "While the prosecution history 'lacks the clarity of

the specification and thus is less useful for claim construction purposes,' it still provides evidence of how the inventor intended the term to be construed." Aventis Pharma. Inc., 715 F.3d at 1373 (Fed. Cir. 2013) (citation omitted) (quoting Phillips, 415 F.3d at 1317) (citing Lemelson v. Gen. Mills, Inc., 968 F.2d 1202, 1206 (Fed. Cir. 1992)).

Each disputed claim term appears in both the '950 and '330 Patents. Since "the ['950 P]atent is a continuation of the ['330 P]atent, and their specifications are almost identical, the court will interpret shared terms in a consistent manner." Synvasive Corp. v. Stryker Corp., 478 F. Supp. 2d 1193, 1200 (E.D. Cal. 2007) (citing Arthur A. Collins, Inc. v. N. Telecom, Ltd., 216 F.3d 1042, 1044 (Fed. Cir. 2000)); see also Network Appliance, Inc. v. Bluearc Corp., No. C 03-5665 MHP, 2004 WL 5651036, at *5 (N.D. Cal. Nov. 30, 2004) ("Where two patents share the same written description, a common construction of the claims of the patents is 'appropriate.'" (quoting Arthur A. Collins, Inc., 216 F. 3d at 1044)); NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1293 (Fed. Cir. 2005) (holding that when a "patent[] . . . derive[s] from [a] parent application and share[s] many common terms, [the court] must interpret the claims consistently across all asserted patents") (citing Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1350 (Fed. Cir. 2004); Laitram Corp. v. Morehouse Indus., Inc., 143 F.3d 1456, 1460 & n.2 (Fed. Cir. 1998)).

## III. DISCUSSION

The parties dispute the meaning of nine claim terms. The parties have agreed on a construction for "transport container" as follows: "the container for moving material from one geographic location to another," and this construction is adopted.

Plaintiff argues that each disputed term has a "plain and ordinary meaning" and needs no construction since each term is "unambiguous." (Pl.'s Opening Brief 1:24-25, 1:17-18.) Plaintiff further argues that when "claim terms, in the context of the claim as a whole, are clear and do not have special, technical meaning, courts need not construe them." (Id. 7:11-13 (citing Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir. 2001).) Plaintiff also contends that "[m]any of Defendants' proposed constructions import new limitations . . . while other constructions merely replace unambiguous claim language with different words to change the scope of the claims." (Id. 1:12-15.) Plaintiff also argues that "[w]hile the '950 [P]atent describes one embodiment of the invention, it expressly states that the specific embodiment is not intended to be limiting but rather is a basis for teaching the patented invention to one of ordinary skill in the art." (Id. 5:12-14 (citing '950 Patent cols. 2:51-59, 4:55-59; Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004)).) The referenced language in the '950 Patent states:

> As required, detailed embodiments of the present invention are disclosed herein; however, it is to be understood that the disclosed embodiments are merely exemplary of the invention, which may be embodied in various forms. Therefore, specific structural and functional details disclosed herein are not to be interpreted as limiting, but merely as a basis for the claims and as a representative basis for teaching one skilled in the art to variously employ the present invention in virtually any appropriately detailed structure.

('950 Patent col. 2:51-59; see also id. col. 4:55-59 (stating materially similar language).)

Defendants propose constructions for seven of the disputed terms, each premised on intrinsic and extrinsic evidence. In support of their constructions, Defendants rely on a declaration from William J.

Maul, their expert witness, (Decl. of William J. Maul in Supp. of Defs.'
Opening Brief ("Maul Decl."), ECF No. 32-5), and dictionary definitions.
(Decl. of Robert Harkins, Exs. 5-8, ECF Nos. 32-6, 32-7, 32-8, 32-9.)

**A. Proposed Constructions**

Each party's proposed construction of the seven disputed claim
terms, and support therefor, follows.

**1) "Container Packer Guide"**

| Claim Language (Disputed Term in Bold) ['950 Pat. Claims Implicated] | Pl.'s Proposed Construction & Evidence in Support | Defs.' Proposed Construction & Evidence in Support |
|---|---|---|
| container packer guide<br><br>Exemplary Claim Language:<br>A transfer base including proximate and distal ends and a **container packer guide**<br><br>said container packer being movable longitudinally along said **container packer guide** between a retracted position on said transfer base and an extended position extending at least partially from said transfer base distal end<br><br>[1, 9] | Plain and ordinary meaning.<br><br>'950 patent:<br>Abstract;<br>1:55-2:15;<br>3:6-39;<br>4:14-46;<br>Figs. 1-10 & discussion thereof.<br><br>'330 Patent:<br>Abstract;<br>1:46-2:4;<br>2:66-3:26;<br>3:63-4:29;<br>Figs. 1-10 & discussion thereof.<br><br>If Court is inclined to construe the phrase, Pl. suggests "a structure for guiding the container packer" | A pair of vertical structures adjacent to the outside of the container packer sidewalls and [sic] guides the container packer into the transport container.<br><br>'330 Patent, Fig. 10 no. 18.<br><br>'950 Patent, Fig. 10 no. 18.<br><br>'330 File Wrapper, Amendment and Request for Reconsideration After Non-Final Rejection, 9/10/2009, p.2 ("A container packer guide 19 is mounted on the transfer base and acts to guide the container packer 6 along the longitudinal path of the transfer base.").<br><br>'330 File Wrapper, Applicant Argument/ Remarks Made in an Amendment, 9/10/2009, Fig. 10 no. 19 ("#19 refers to the container packer guide located on the transfer base.").<br><br>'330 File Wrapper, Amendment Submitted/ Entered, 03/23/2010, p. 2 (reference to element 19, the container packer guide, was deleted in the specification and figures).<br><br>Maul Decl., ¶ 6. |

Plaintiff argues that

> Defendants' proposed construction attempts to place very specific limitations on the "container packer guide," requiring that it (1) consist of a "pair . . . of structures"; (2) that the structures be "vertical"; (3) that they be adjacent to the outside of the container packer sidewalls; and (4) that they guide the container packer not only between a retracted and extended position but also "into the transport container." These added limitations are found nowhere in the claims and are not supported by the specification or the prosecution history, and accordingly should be rejected.

(Pl.'s Opening Brief 8:25–9:2.) Plaintiff also argues that "[t]he particular aspects of Figure 10" on which Defendants rely in support of their construction argument "cannot define the full contours of the claims of the patent as a whole" since the "figures depict embodiments in [a] patent, but are not meant to constitute limitations on the scope of the claims." (Pl.'s Responsive Claim Construction Brief ("Pl.'s Responsive Brief") 3:19–20, 3:23–24 (citing <u>Gart</u>, 254 F.3d at 1342; <u>Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.</u>, 540 F.3d 1337, 1345 (Fed. Cir. 2008)), ECF No. 38.)

Plaintiff further argued at the hearing that this claim term need not be construed since the word "guide" provides enough information for a person having ordinary skill in the art to know <u>where</u> the container packer guide is, specifically, that it is on the transfer base, as well as <u>what</u> the container packer guide does, specifically, that it helps guide the container packer longitudinally along the transfer base between retracted and extended positions. Plaintiff further argued that the specification need not contain every detail, that the claim terms of the '330 and '950 Patents must be construed consistently, and that the following language from claim 1 of the '330 Patent supports its argument against Defendants' proposed construction: "a transfer base including proximate and distal ends and a container

packer guide, said transfer base including a floor, and said container packer guide comprising said transfer base floor." ('330 Patent col. 4:46-49.)

Defendants argue that Plaintiff's construction is barred since the applicant's "attempt to modify the patent disclosure" was "rejected as new matter, constitut[ing] prosecution history estoppel," and Plaintiff's proposed plain and ordinary meaning for this claim term "encompass[es] the rejected matter." (Defs.' Responsive Brief 4:13-15 (citing Austl. Vision Servs. Pty. Ltd. v. Dioptics Med. Prods., Inc., 29 F. Supp. 2d 1152, 1158 (C.D. Cal. 1998)).) Specifically, Defendants contend that after the applicant removed references to element 19 from the patent application, "the claim term [was] entirely without support in the patent" unless element 18 (transfer base sidewalls) could serve as the container packer guide. (Defs.' Responsive Brief 3:1.) However, this argument is not supported by the language quoted by Plaintiff from claim 1 of the '330 Patent, which states "said container packer guide comprising said transfer base floor," thereby indicating that the container packer guide can be (and must include) the transfer base floor.

At the hearing, Defendants cited Baldwin Graphic Systems, Inc. v. Siebert, Inc., 512 F.3d 1338, 1344 (Fed. Cir. 2008), in support of their position that the applicant surrendered a broader scope of "container packer guide" during patent prosecution. Plaintiff rejoined that the Baldwin prosecution history differs from the instant prosecution history. Specifically, Plaintiff argued that the Baldwin applicant had tried to broaden its patent's scope (and was therefore prevented from claiming the broader scope); in contrast, here, the applicant did not try to broaden the disclosure by adding element 19,

and in fact adding element 19 would, if anything, have narrowed the disclosure's scope.

> As an initial matter, although the parties have labeled their disagreement as one pertaining to prosecution history estoppel, we note some ambiguity as to whether the substance of their arguments . . . in fact concerns . . . prosecution disclaimer . . . . Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution. Prosecution disclaimer, on the other hand, affects claim construction and applies where an applicant's actions during prosecution prospectively narrow the literal scope of an otherwise more expansive claim limitation.

Trading Techs. Int'l, Inc. v. Open E Cry, LLC, --- F.3d ----, No. 2012-1583, 2013 WL 4610693, at *10 (Fed. Cir. 2013) (citations omitted). "[T]he doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." Omega Eng'g, Inc., 334 F.3d 1314, 1325 (Fed. Cir. 2003). "When a patentee makes a 'clear and unmistakable disavowal of scope during prosecution,' a claim's scope may be narrowed under the doctrine of prosecution disclaimer." Grober v. Mako Prods., Inc., 686 F.3d 1335, 1341 (Fed. Cir. 2012) (quoting Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1374 (Fed. Cir. 2008)).

Prosecution disclaimer typically applies when the patent examiner requires an applicant to include a limitation in a claim to distinguish the invention from prior art; the applicant may not later argue for a claim construction consistent with the prior, broader claim scope. Here, the applicant was instructed to remove language and an element in a figure from the patent application, not add language (or an element to a drawing) to the application. (McCracken Decl., Ex. E, Office Action 12/13/2009, at ¶ 2 ("[T]he newly added element 19 is

considered new matter and must be removed from the drawings."); id. ¶ 3

("Applicant is required to cancel the new matter in the reply to this

Office Action.").) This removal of element 19 does not constitute a

"'clear and unmistakable disavowal of [claim] scope'" that would invoke

the doctrine of prosecution disclaimer. Grober, 686 F.3d at 1341

(quoting Computer Docking Station Corp., 519 F.3d at 1374). Therefore,

prosecution disclaimer does not apply.

For the stated reasons, Defendants' proposed construction is

not adopted.[1] Further, the claim term does not require construction.

**2) "Distal End with an Opening"**

| Claim Language (Disputed Term in Bold) ['950 Pat. Claims Implicated] | Pl.'s Proposed Construction & Evidence in Support | Defs.' Proposed Construction & Evidence in Support |
|---|---|---|
| distal end with an opening<br><br>Exemplary Claim Language:<br>A container packer including a proximate end, **a distal end with an opening,** | Plain and ordinary meaning.<br><br>'950 Patent: Abstract; cols. 2:53-61; 3:28-54; 4:33-35; Figs. 1-10 & discussion thereof. | A structure that contains a hole, is attached to the opposite side walls and resides opposite the proximate end.<br><br>'330 Patent, Fig. 2 no. 32, Fig. 4 no. 32, Fig. 10 no. 32, col. 3:24-25.<br><br>'950 Patent, Fig. 2 no. 32, Fig. 4 no. 32, Fig. 10 no. 32, col. 3:32-33.<br><br>**Distal**<br>"situated away from the point of attachment or origin or a central point" Source: distal. Merriam Webster Dictionary. Merriam-Webster, Inc. 2013. |

---

[1] Defendants argued at the hearing that their proposed construction could be modified to include the transfer base floor as part of the construction of "container packer guide," based on the following language quoted by Plaintiff from the '330 Patent: "said transfer base including a floor, and said container packer guide comprising said transfer base floor." ('330 Patent col. 4:47-49.) However, adopting this proposed construction would "narrow [the] claim term to deviate from the plain and ordinary meaning" when the inventor has not "intentionally disclaimed or disavowed claim scope." Aventis Pharma., Inc., 715 F.3d at 1373.

| opposite sidewalls, a floor and an interior<br><br>[1, 9] | '330 Patent: Abstract; cols. 2:60-64; 3:21-46; 4:16-18; Figs. 1-10 & discussion thereof. | http://www.merriamwebster.com/dictionary/distal<br><br>**End**<br>"a part or place at or adjacent to an extremity"<br>Source: end. Dictionary.com. Unabridged based on the Random House Dictionary. Random House, Inc.<br>http://dictionary.reference.com/browse/end<br>"the terminal unit of something spatial that is marked off by units"<br>Source: end. Merriam Webster Dictionary. Merriam-Webster, Inc. 2013.<br>http://www.merriam-webster.com/dictionary/end<br><br>**Opening**<br>"a void in solid matter; a gap, hole, or aperture."<br>Source: opening. Dictionary.com. Unabridged based on the Random House Dictionary. Random House, Inc.<br>http://dictionary.reference.com/browse/opening<br><br>Maul Decl., ¶ 7. |
|---|---|---|

Defendants contend they "construe 'distal end' as [a] 'structure'" "as it must be [construed] in order to contain an opening, and the structure is further set forth as 'distal,' that is, opposite the 'proximate end' and adjacent to the opposite side walls." (Defs.' Responsive Brief 5:17, 6:12-14.)[2] The gravamen of Defendants' argument is that a "distal end" must be its own structure and cannot be construed as being part of another structure.

---

[2] Defendants also argue that "[t]he distal end is not just simply the 'back opening' (element 35) as [Plaintiff] contends. It actually is not the back opening at all. It is 'back end 36,' which contains back opening 35." (Defs.' Responsive Brief 6:1-2 (quoting '330 Patent col. 3:33-34).) However, Defendants misstate Plaintiff's construction of "distal end." Plaintiff actually states that "distal end with an opening" means "far end with an opening." (Pl.'s Responsive Brief 4:14.) Thus, Plaintiff's meaning of "distal end" is simply "far end," and has no reference to an opening at all.

Defendants point to sections of the '950 and '330 Patents as support for their argument. However, these sections describe the container packer drive rather than the container packer, and therefore provide no support for Defendants' proposed construction. (See '330 Patent, Fig. 2 no. 32, Fig. 4 no. 32, Fig. 10 no. 32, col. 3:24-25; '950 Patent, Fig. 2 no. 32, Fig. 4 no. 32, Fig. 10 no. 32, col. 3:32-33.)

Plaintiff contends that Defendants' proposed construction "is inconsistent with the use of 'distal end' elsewhere in the patent claims, [e.g.,] the transfer base also has proximate and distal ends.'" (Pl.'s Responsive Brief 5:6-8.) Plaintiff further argues that if Defendants' proposed construction were adopted, "th[e] phrase 'distal end' would have to be given a different meaning in each location where it appears in the claims[, which] would be improper." (Id. 5:11-12.) Plaintiff conveyed at the hearing that "end" more logically refers to a location than a structure.

"[T]he same terms appearing in different claims in the same patent . . . should have the same meaning 'unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.'" Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1328 (Fed. Cir. 2006) (quoting Fin. Control Sys. Pty, Ltd. v. OAM, Inc., 265 F.3d 1311, 1318 (Fed Cir. 2001)) (citing Phillips, 415 F.3d at 1314). Here, "distal end" appears in claims referring to the transfer base, ('950 Patent col. 4:62-63 ("a transfer base including proximate and distal ends"); id. cols. 5:34-35, 5:42-43 ("said transfer base distal end")), which only has a structure on its proximate end. (See '950 Patent, Figs. 1, 2.) Descriptions of the container packer and transfer base ends as either "distal" or "proximate" identify those ends to the reader of the patent

based on the orientation of the figures in the patent, and, based on the intrinsic evidence, are not required to be separate structures.

Plaintiff also argued at the hearing that the doctrine of claim differentiation applies to this claim term, quoting from <u>Phillips</u>: "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." <u>Phillips</u>, 415 F.3d at 1315. Plaintiff further argued that, under the doctrine of claim differentiation, since claim 4 contains reference to a door, claim 1 cannot contain a door—and therefore the container packer distal end does not require a structure to which a door could be attached. Plaintiff also contends that "Defendants' proposed construction is predicated upon an importation of one embodiment into the claim language . . . rely[ing] upon an embodiment having an overhead door, which opens and closes a back opening, in order to construct a new claim limitation of a structure with a hole." (Pl.'s Responsive Brief 4:18–21.)

Here, the '950 Patent states: "It is to be understood that while certain embodiments and/or aspects of the invention have been shown and described, the invention is not limited thereto and encompasses various other embodiments and aspects." ('950 Patent col. 4:55–58.) This specifically contradicts the possibility that Plaintiff "demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" <u>Liebel-Flarsheim Co.</u>, 358 F.3d at 906 (quoting <u>Teleflex, Inc.</u>, 299 F.3d at 1327).

The disputed claim term "distal end with an opening" is readily understood when given its plain and ordinary meaning, and Defendants' proposed construction is unsupported since it references

16

portions of the patent about the container packer drive rather than the container packer. Therefore, this claim term need not be construed.

### 3) "Interior"

| Claim Language (Disputed Term in Bold) ['950 Pat. Claims Implicated] | Pl.'s Proposed Construction & Evidence in Support | Defs.' Proposed Construction & Evidence in Support |
|---|---|---|
| interior<br><br>Exemplary Claim Language:<br>A container packer including a proximate end, a distal end with an opening, opposite sidewalls, a floor and an **interior**<br><br>[1, 7, 9, 15] | Plain and ordinary meaning.<br><br>'950 Patent: Abstract; cols. 1:55-2:14; 3:6-9; 3:34-54; 3:63-4:2; 4:14-35; Figs. 1-10 & discussion thereof.<br><br>'330 Patent: Abstract; cols. 1:46-2:5; 2:66-3:3; 3:26-3:47; 3:55-4:18; Figs. 1-10 & discussion thereof. | The space defined by the proximate end, distal end, opposite sidewalls and floor for holding bulk material in the container packer.<br><br>'330 Patent, Fig. 5 no. 46, col. 3:46-50.<br><br>'950 Patent, Fig. 5 no. 46, col. 3:54-68.<br><br>**Interior**<br>"the internal or inner part; inside"<br>Source: interior. Dictionary.com. Unabridged based on the Random House Dictionary. Random House, Inc. http://dictionary.reference.com/browse/interior<br>"a part, surface, or region that is inside or on the inside"<br>Source: interior. Dictionary.com. Collins English Dictionary – Complete & Unabridged 10th Edition. Harper Collins Publishers. http://dictionary.reference.com/browse/interior<br><br>Maul Decl., ¶ 10. |

Defendants argue that their proposed construction "makes it clear that the interior is not some additional or other space, but is the space that is bounded by the four sides and the floor for the purpose set out in the patent, which is to hold bulk material." (Defs.' Opening Brief 12:1-3.) Plaintiff rejoins that "Defendants' . . . motive for [this] non-infringement-based construction [is] to require that the only structure that can have an 'interior' is one that has four walls.'" (Pl.'s Responsive Brief 6:16-17 (citing Defs.' Opening Brief at 12).)

Plaintiff further argued at the hearing that an interior "need not be completely closed."

The Federal Circuit has upheld the district court's decision to decline to construe a claim term including the word "interior" in a system patent. E.g., Aero Prods. Int'l, Inc. v. Intex Recreation Corp., 466 F.3d 1000, 1011 n.5 (Fed. Cir. 2006) ("We see no error in the district court's construction of the term passageway ('a way that allows a passage of air to and from the interior of the bed').").

Here, the disputed claim term "interior" does not require construction and therefore need not be construed. See generally Aero Prods. Int'l, Inc., 466 F.3d at 1011 n.5.

**4) "Said Container Packer Being Movable . . ."**

| Claim Language (Disputed Term in Bold) ['950 Pat. Claims Implicated] | Pl.'s Proposed Construction & Evidence in Support | Defs.' Proposed Construction & Evidence in Support |
|---|---|---|
| **said container packer being movable... between a retracted position on said transfer base and an extended position extending at least partially from said transfer base distal end** [1, 9] | Plain and ordinary meaning.<br><br>'950 Patent: Abstract; cols. 1:55-2:14; 3:6-9; 3:34-54; 3:63-4:2; 4:9-46; Figs. 1-10 & discussion thereof.<br><br>'330 Patent: Abstract; cols. 1:46-2:5; 2:66-3:3; 3:26-3:47; 3:49-4:29; Figs. 1-10 & | The container packer moves between a position that is not extended at least partially beyond the transfer base distal end and a position that is extended at least partially from the transfer base distal end.<br><br>'330 Patent, Figs. 1 & 2, col. 1:46-50, col. 4:7-10, 4:25-27.<br><br>'950 Patent, Figs. 1 & 2, col. 1:55-59, col. 4:24-27, 4:42-44.<br><br>**Retract**<br>"to draw back within itself or oneself, fold up, or the like, or to be capable of doing this: The blade retracts."<br>Source: retract. Dictionary.com. Unabridged based on the Random House Dictionary. Random House, Inc.<br>http://dictionary.reference.com/browse/retract<br>"to draw or pull back" |

18

| | discussion thereof. | Source: retract. Merriam Webster Dictionary. Merriam-Webster, Inc. 2013. http://www.merriamwebster. com/dictionary/retract |
| | | Maul Decl., ¶ 11. |

Plaintiff argues that Defendants' construction is an "attempt to rewrite the claims in order to add a limitation to 'retracted position' that is not contained in the patent, namely that the retracted position must not extend past the distal end of the transfer base." (Pl.'s Opening Brief 15:1–3.) Plaintiff further contends that "[e]ven though the retracted and extended positions referred to in the claim language are distinct," the key distinction is not that the two positions are mutually exclusive regarding extension past the transfer base distal end, but that "the extended position extends *further* beyond the transfer base distal end" than the retracted position. (Pl.'s Responsive Brief 7:14–15, 7:17–18.)

Defendants contend that since the definition of "extended position" is "'extending at least partially from said transfer base distal end,' the retracted position must necessarily be the position that is not at least partially extended from the transfer base distal end"; "that is, the container packer [could] not be in the retracted position and extended position simultaneously." (Id. 12:21–23 (quoting '950 Patent), 12:18–20.)

When "the 'ordinary' meaning of a term does not resolve the parties' dispute, . . . claim construction requires the court to determine what claim scope is appropriate in the context of the patents-in-suit." O2 Micro Int'l Ltd., 521 F.3d at 1361. Here, the parties' dispute, narrowly defined, is whether when the container packer is in a retracted position, it must be entirely on the transfer base; Defendants

argue it must be, while Plaintiff argues that it can be partially extended beyond the transfer base distal end and still within the claim's scope. Declining to construe this claim term could result in the parties arguing the definition of "on" to the jurors at trial. Therefore, the claim term must be construed to clarify the scope of "on" within the claim term.

Although Figure 1 of the '950 Patent shows the container packer fully on the transfer base (i.e., not partially extended over it), the patent expressly states that "embodiments and/or aspects of the invention [that] have been shown and described[ do] not limit[ the patent] thereto." ('950 Patent col. 4:55–57; see '950 Patent, Fig. 1.) At the hearing, Plaintiff provided drawings of an alternate embodiment of the container packer in which the container packer extends beyond the transfer base distal end when the container packer is in a retracted position. (Pl.'s Claim Construction Hearing Presentation, at 45.) The claim language defines the bounds of claim scope." Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1324 (Fed. Cir. 2002). This alternate embodiment was within the scope of the claim.

Further, the patents contain no reference to the size of the transfer base relative to the size of the container packer. Defendants' proposed construction requires that the transfer base be at least as long as the container packer (since the container packer cannot extend beyond the container packer distal end when it is in its retracted position). To read language into the claim term that dictates the size of the transfer base relative to the size of the container packer without evidence of an "intentional[] disclaim[er] or disavow[al of] claim scope"–none of which has been provided–would improperly "narrow [the] claim term." Aventis Pharma. Inc., 715 F.3d at 1373.

Defendants' proposed construction is not adopted. However, since the parties dispute the scope of the word "on" in this claim term, the following claim construction is adopted: "said container packer being movable . . . between a retracted position at least partially on said transfer base and an extended position extending at least partially from said transfer base distal end."

**5) "Discharging Bulk Material Through Said Container Packer Distal End Opening"**

| Claim Language (Disputed Term in Bold) ['950 Pat. Claims Implicated] | Pl.'s Proposed Construction & Evidence in Support | Defs.' Proposed Construction & Evidence in Support |
|---|---|---|
| discharging bulk material through said container packer distal end opening<br><br>Exemplary Claim Language:<br>a material transfer assembly mounted in said container packer interior and adapted for **discharging bulk material through said container packer distal end opening**<br><br>[1, 9] | Plain and ordinary meaning.<br><br>'950 Patent: Abstract; cols. 1:55-2:14; 3:6-9; 3:34-54; 3:63-4:2; 4:14-35; Figs. 1-10 & discussion thereof.<br><br>'330 Patent: Abstract; cols. 1:46-2:5; 2:66-3:3; 3:26-3:47; 3:55-4:19; Figs. 1-10 & discussion thereof. | Moving bulk material out of the container packer through the opening in the container packer distal end.<br><br>'330 Patent, Fig. 8, cols. 3:39-46, 4:10-13, 4:16-18.<br><br>'950 Patent, Fig. 8, cols. 3:46-54, 4:27-30, 4:33-35.<br><br>**Discharge**<br>"to remove (the cargo) from (a boat, etc); unload"<br>Source: discharge. Dictionary.com. Collins English Dictionary – Complete & Unabridged 10th Edition. Harper Collins Publishers.<br>http://dictionary.reference.com/browse/discharge<br>"to unload or empty (contents)"<br>Source: discharge. American Heritage Dictionary of the English Language, Fifth Edition. Houghton Mifflin Harcourt Publishing Company.<br>http://www.ahdictionary.com/word/search.html?q=discharge<br><br>Maul Decl., ¶ 12. |

Plaintiff argues that "Defendants provide no reason why 'discharge' needs special interpretation for the jury by the Court or why it is necessary to substitute Defendants' language for the

patentee's," (Pl.'s Responsive Brief 8:20-21), and "[t]he term does not need any . . . construction." (Pl.'s Opening Brief 16:5.) At the hearing, Plaintiff contended that Defendants' proposed construction would rearrange the claim term language and add ambiguity to the claim term.

Defendants counter that their "proposal assists the jury to understand what the claim requires, that is, that the bulk material is moved out of the container loader and into the transport container through the opening that is in the distal end." (Defs.' Responsive Brief 10:13-15.) At the hearing, Defendants admitted that the differences between "discharging" and "moving out of" were not significant but suggested that the latter phrase would be easier for jurors to understand.

Since Defendants have not shown that their word choice is better than "the word that the inventor actually chose," or that the plain and ordinary meaning of this claim term is unclear, the claim term need not be construed. Int'l Rectifier Corp., 361 F.3d at 1374.

**6) "Said Push Blade Assembly Is Adapted for Compacting Bulk Materials in Said Container"**

| Claim Language (Disputed Term in Bold) ['950 Pat. Claims Implicated] | Pl.'s Proposed Construction & Evidence in Support | Defs.' Proposed Construction & Evidence in Support |
|---|---|---|
| said push blade assembly is adapted for compacting bulk material in said container<br><br>Exemplary Claim Language:<br>said push blade assembly movement sequentially cooperating with | Plain and ordinary meaning.<br><br>'950 Patent: Abstract; cols. 1:33-46; 1:55-2:14; 3:6-9; 3:34-4:46; Figs. 1-10 & discussion thereof. | The push blade assembly presses together bulk material in the container packer.<br><br>Alternate Construction: "the push blade assembly is adapted so that it presses together bulk material in the container packer"<br><br>'330 Patent, col. 4:16-20.<br><br>'950 Patent, col. 4:30-37. |

| | | |
|---|---|---|
| said container packer movement whereby **said push blade assembly is adapted for compacting bulk material in said container**<br><br>[1, 9] | '330 Patent: Abstract; cols. 1:09-38; 1:46-2:5; 2:66-3:3; 3:26-4:29; Figs. 1-10 & discussion thereof. | **Compact**<br>"to press together: COMPRESS" Source: compact. Merriam Webster Dictionary. Merriam-Webster, Inc. 2013. http://www.merriamwebster.com/dictionary/compact<br><br>Maul Decl., ¶ 14. |

At the hearing, the Court proposed the following tentative claim construction for the phrase "said container" in this claim term: "the container for moving material from one geographic location to another." Plaintiff did not argue against this construction, and Defendants opposed it.

Defendants argue that "said container" must refer to the "container packer" since "said container packer" appears earlier in the claim. Defendants further contended that the use of "said" provides an antecedent basis for the earlier use of "container packer" in claims 1 and 9. Defendants also argued since the container packer is itself a container its proposed construction is supported.

Plaintiff countered that any reference to compacting in the patent claims has it occurring in the transport container.

Defendants' argument is not supported by the text of claim 9 of the '950 Patent, which states:

> activating said material transfer assembly drive, thereby extending said push blade assembly piston-and-cylinder unit, wherein said push blade assembly movement sequentially cooperates with said container packer movement whereby said bulk material is pushed from within said container packer into said transport container, and whereby said bulk material is compacted within said container[.]

('950 Patent col. 7:14-21 (emphasis added).) Thus, claim 9 provides an antecedent of "said transport container" for "said container." Further,

this portion of the method in claim 9 corresponds directly to the portion of the system in claim 1, suggesting that the phrase "said container" at the end of each clause should have the same meaning. Other language in the patent supports Plaintiff's argument that material is compacted in the transport container rather than the container packer; the written description of the '950 Patent states: "Depending upon the nature of the bulk material **10**, it may be compacted by the push blade assembly **50** <u>in the transport container</u> **8**." ('950 Patent col. 4:35–37.) The '950 Patent contains no reference to compacting occurring within the container packer.

The prosecution history further supports Plaintiff's position that "said container" refers to the transport container rather than the container packer. In distinguishing the instant invention from the prior art during patent prosecution of the '330 Patent, the applicant states:

> The main difference between the present invention as claimed presently, and Frankel [prior art patent], is that the present invention includes a two-stage hydraulic system that both loads and <u>compacts bulk material into a transportation container</u>. . . . The presently claimed invention is distinguishable [from Frankel] because it employs a two-direction motion system that <u>allows material to be pushed away from the loading end of the transport container and optionally compact that material</u> as the container is being loaded.

(Amendment to Accompany RCE and Stmt. of Substance of Mar. 10, 2010 Interview, at 8 (Mar. 23, 2010), Complete Prosecution History, Ex. B, at p. 34 of 201 (emphases added); ECF No. 42-2.) The '330 Patent was subsequently granted. (<u>See</u> Notice of Allowance & Fee(s) Due, Complete Prosecution History, Ex. B, pp. 13–15 of 201.) This argument made to the patent examiner demonstrates that the applicant differentiated the instant invention from prior art based on its ability to both load into and compact within a transport container.

1    Defendants also argued that language in dependent claims 7 and

2 15 supports their contention that the patent's purpose is to compact

3 within the container packer; they quoted the following language from the

4 claims: "the material transfer assembly can move and compact the entire

5 volume of bulk material within said container packer assembly with one

6 extension of said assembly piston-and-cylinder." ('950 Patent col.

7 6:16-19; id. col. 8:30-34.) The gravamen of Defendants' argument is that

8 these claims demonstrate that in claims 7 and 15, "the material transfer

9 assembly" is "compact[ing] . . . within said container packer," which

10 supports their proposed construction.

11    Plaintiff countered that the appropriate interpretation of

12 those claims' language is that "the material transfer assembly"

13 "compact[s] the entire volume of bulk material [located] within said

14 container packer assembly." By inserting the word "located" for clarity,

15 Plaintiff demonstrates that "within said container packer assembly"

16 modifies "the entire volume of bulk material" rather than "compact."

17 Therefore, Defendants' proposed construction is not adopted.

18    However, since the phrase "said container" is more confusing

19 than "transport container" in the context of this claim, and since a

20 construction for "transport container" has been adopted, the following

21 claim construction is adopted for clarity: "said push blade assembly is

22 adapted for compacting bulk material in the container for moving

23 material from one geographic location to another."

24 **7) "Compact the Entire Volume of Bulk Material Within Said Container**
**Packer Assembly with One Extension of Said Assembly Piston-and-**
25 **Cylinder"**

| Claim Language (Disputed Term in Bold) ['950 Pat. Claims Implicated] | Pl.'s Proposed Construction & Evidence in Support | Defs.' Proposed Construction & Evidence in Support |
|---|---|---|

| | | |
|---|---|---|
| compact the entire volume of bulk material within said container packer assembly with one extension of said assembly piston-and-cylinder.<br><br>Exemplary Claim Language:<br>The system of claim 1 wherein said push blade is of substantially equal height and width of the container packer interior so that the material transfer assembly can move and **compact the entire volume of bulk material within said container packer assembly with one extension of said assembly piston-and-cylinder.**<br><br>[7, 15] | Plain and ordinary meaning.<br><br>'950 Patent: cols. 3:54-66; 4:30-37; Figs. 1-10 & discussion thereof; claims 7, 15.<br><br>'330 Patent: cols. 3:46-61; 4:13-20; Figs. 1-10 & discussion thereof. | Completely compress the bulk material inside the container packer assembly by moving the piston-and-cylinder into an extended position one time.<br><br>'330 Patent File Wrapper, Amendment After Final Rejection 02/23/2010, p. 10 ("The Hamill push blade lacks the compaction ability have [sic] because it could not possibly turn the entire load of bulk material located in its storage bay into one bale of material. The blade is too short to compact the entire volume of material, and thus only a small portion of material could be compacted at a time. This is not an issue with the invention as presently claimed. Claim 1, as presently amended, points out that the push blade employed in the present invention fills the entire volume of the container packer and can move the entire volume of bulk material in one full extension of its hydraulic arm.")<br><br>**Compact**<br>"to press together: COMPRESS"<br>Source: compact. Merriam Webster Dictionary. Merriam-Webster, Inc. 2013. http://www.merriamwebster.com/dictionary/compact<br><br>Maul Decl., ¶ 17. |

Defendants contend that their "phrase 'completely compress' is just as clear in meaning as the phrase 'compact the entire volume.'" (Defs.' Responsive Brief 12:21-22.) Defendants further argued at the hearing that Plaintiff "incorrectly asserts the bulk material can remain partially uncompressed." Defendants also made a non-infringement-based argument that their accused device does not "completely compress anything."

1  Plaintiff rejoins that "Defendants' proposed construction

2  . . . essentially adds the word 'completely' to the claim, thus

3  conflating 'compact the entire volume' with 'entirely compact the

4  volume.'" (Pl.'s Responsive Brief 10:12-14.) Plaintiff reiterated at the

5  hearing that "compact the entire volume" does not mean "entirely compact

6  the volume." Plaintiff further argues that "[b]eing able to compact, or

7  press, bulk material to some degree based on a single extension of a

8  push blade does not define the degree to which that bulk material would

9  have to be compressed." (Pl.'s Responsive Brief 10:17-19.)

10  Defendants relied on the '330 Patent prosecution history to

11  support their argument. However, the prosecution history supports

12  Plaintiff's argument. In response to the PTO action of December 23,

13  2009, the applicant made the following argument to distinguish the

14  container packer system and method from prior art, specifically the push

15  blade in the Hamill invention:

16  The Hamill push blade cannot possibly compress
   and move the entire volume of material located in
17  the material storage bay in one movement of the
   push blade's hydraulic arm. The push blade employed
18  by Hamill does not fill the entire volume of the
   material storage bay, and thus would have to move
19  back and forth several times to compact or unload
   the entire load of bulk material.
20  The Hamill push blade lacks the compaction
   ability have [sic] because it could not possibly
21  turn the entire load of bulk material located in
   its storage bay into one bale of material. The
22  blade is too short to compact the entire volume of
   material, and thus only a small portion of material
23  could be compacted at a time. This is not an issue
   with the invention as presently claimed. Claim 1,
24  as presently amended, points out that the push
   blade employed in the present invention fills the
25  entire volume of the container packer and can move
   the entire volume of bulk material in one full
26  extension of its hydraulic arm.

27  (Appl. No. 12/138,973; Amdt. dated Mar. 23, 2010; Reply to Office action

28  of Dec. 23, 2009, at 9; ECF No. 42-2 (p. 35 of 201).) These arguments do

not distinguish the prior art of the Hamill push blade based on the degree to which the invention's push blade compacts the bulk material. Instead, to distinguish this invention from the Hamill push blade, which is described as "too short to compact the entire volume of material" and as "not fill[ing] the entire volume of the material storage bay," the applicant argued that this invention's push blade "fills the entire volume of the container packer and can move the entire volume of bulk material in one full extension of its hydraulic arm." (Id.) This supports Plaintiff's argument that the claim term "does not define the degree to which th[e] bulk material would have to be compressed." (Pl.'s Responsive Brief 10:18–19.)

Here, Defendants' proposed construction conflates "compact the entire volume" with "entirely compact the volume," which changes the term's meaning, and which the intrinsic evidence does not support. Therefore, Defendants' proposed construction is not adopted, and the claim term need not be construed.

**B. Indefiniteness**

Defendants argue that the two remaining disputed terms fail for indefiniteness; Plaintiff rejoins that they do not.

Defendants argued at the hearing that the inability to construe a claim term means the term is indefinite, and both "approximate" and "in proximity to" fail for indefiniteness. Defendants further contended that without construction both terms "are ripe for abuse." Plaintiff responds, *inter alia*, quoting from Hearing Components, Inc. v. Shure Inc.: "A patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." 600 F.3d at 1367. Plaintiff also cited to a number of cases in which terms of degree were upheld by the Federal Circuit.

Defendants rejoined that since every case requires a fact-specific inquiry, Plaintiff could not rely on the Federal Circuit upholding like terms in other cases.

"The definiteness analysis requires a determination of 'whether one skilled in the art would understand the bounds of the claim when read in light of the specification.'" Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc., 554 F.3d 1010, 1022 (Fed. Cir. 2009) (quoting Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 705 (Fed. Cir. 1998)). "A claim is indefinite only when it is 'not amenable to construction' or 'insolubly ambiguous.'" Biosig Instruments, Inc. v. Nautilus, Inc., 715 F.3d 891, 897 (Fed. Cir. 2013) (quoting Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005)).

Plaintiff argued at the hearing that the Maul Declaration did not support Defendants' indefiniteness argument since it provides only conclusory statements. Defendants rejoined that the Maul Declaration "explains why" the terms fail for indefiniteness. Defendants relied on Martek Biosciences Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1371 (Fed. Cir. 2009), quoting from the decision as follows: "When an expert states why he reaches a conclusion regarding claim construction, it is not conclusory and can be relied upon." Defendants further argued that Plaintiff wants to ignore the Maul Declaration because Plaintiff has no expert testimony.

Maul declares that: "One of skill in the art would not be able to tell if a device practiced the claim in the patents-at-issue or not because the term 'approximate' is too vague and renders the term indefinite." (Maul. Decl. ¶ 16.) However, Maul does not provide any support for Defendants' argument that the term "in proximity to" is

1  indefinite, but instead refers to the term "proximate," (id. ¶ 13), for

2  which Defendants do not make an indefiniteness argument.

3       The parties' respective positions, and support therefor, on

4  whether the terms are indefinite follows.

5  **1) "In Proximity To"**

| Claim Language (Disputed Term in Bold) ['950 Pat. Claims Implicated] | Pl.'s Proposed Construction & Evidence in Support | Defs.' Proposed Construction & Evidence in Support |
|---|---|---|
| in proximity to<br><br>Exemplary Claim Language:<br>said material transfer assembly comprising a push blade assembly located in and affixed to said container packer and movable longitudinally between a retracted position **in proximity to** said container packer proximate end and an extended position **in proximity to** said container packer distal end;<br>A transport container selectively located **in proximity to** said transfer base distal end.<br><br>[1, 9] | Plain and ordinary meaning.<br><br>'950 Patent: Abstract; cols. 1:55–2:14; 3:6–9; 3:28–4:35; Figs. 1–10 & discussion thereof.<br><br>'330 Patent: Abstract; cols. 1:39–42; 1:46–2:5; 3:20–4:18; Figs. 1–10 & discussion thereof. | Indefinite – No way of determining whether one structure is sufficiently close to be "in proximity to" another.<br><br>Proximity<br>"the quality or state of being proximate: closeness" Source: compact. [sic] Merriam Webster Dictionary. Merriam-Webster, Inc. 2013. http://www.merriamwebster.com/dictionary/proximity<br><br>Proximate [sic]<br>"very near: close" Source: compact. [sic] Merriam Webster Dictionary. Merriam-Webster, Inc. 2013. http://www.merriamwebster.com/dictionary/proximate<br><br>Maul Decl., ¶ 13. |

22      Defendants argue that "there is no way to determine whether

23  one structure is sufficiently close to be 'in proximity to' another

24  structure." (Defs.' Responsive Brief 13:5–6.) Defendants also contend

25  that "[a] claim term with no objective anchor defining with certainty

26  the bounds of a claim's scope renders the term indefinite and the claim

27  invalid." (Defs.' Opening Brief 13:17–18 (citing Datamize, LLC, 417 F.3d

28  at 1350–51).) Defendants contend "that one skilled in the art cannot

possibly know how close is close enough to fall within the scope of the claim," and "it is not possible to tell how close a referenced element would have to be in order to be 'proximate' [sic]." (Defs.' Opening Brief 14:12-13, 14:18-19 (citing Maul Decl. ¶ 13).)

Plaintiff rejoins that "[w]hen the term is considered in [the] context [of the patent], it is clear that not only is the term definite, but its meaning is clear and does not require further construction." (Pl.'s Responsive Brief 12:1-4.) Plaintiff further argues that "the phrase 'in proximity to' has been widely accepted by the Federal Circuit." (Id. 12:18.) Plaintiff also contends that "[b]ecause a layperson, let alone a person of ordinary skill in the art, can understand the scope of 'in proximity to' when read in the context of the claims, the term is not indefinite and should be given its ordinary meaning." (Pl.'s Opening Brief 21:14-16 (citing Shimano, Inc. v. Campagnolo S.R.L., No. CV 00-7710(GAF)(SHx), 2001 WL 36169714 (C.D. Cal. July 2, 2001); Rosemount, Inc. v. Beckman Instruments, Inc., 727 F.2d 1540, 1546-47 (Fed. Cir. 1984)).)

The Federal Circuit has held that terms such as "close to" and "closely approximate" "are ubiquitous in patent claims. Such usages when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention, and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the courts." Andrew Corp. v. Gabriel Elecs., Inc., 847 F.2d 819, 821 (Fed. Cir. 1988); see also Rosemount, Inc. v. Beckman Instruments, Inc., 727 F.2d 1540, 1546-47 (Fed. Cir. 1984) (indicating the context in which the terms are used is considered and stating that "'close proximity' is as precise as the subject matter permits"). This supports Plaintiff's arguments that the phrase "in

proximity to" is not indefinite and requires no construction in light of the context in which the terms are used.

For the stated reasons, "in proximity to" neither fails for indefiniteness nor requires construction.

**2) "Said Push Blade Assembly Piston-and-Cylinder Unit Is Attached at the Approximate Center of Said Push Blade Assembly"**

| Claim Language (Disputed Term in Bold) ['950 Pat. Claims Implicated] | Pl.'s Proposed Construction & Evidence in Support | Defs.' Proposed Construction & Evidence in Support |
|---|---|---|
| said push blade assembly piston-and-cylinder unit is attached at the approximate center of said push blade assembly<br><br>Exemplary Claim Language:<br>The system of claim 1, wherein said container packer drive piston-and-cylinder unit is attached at a position relative to the base of said container packer, and **said push blade assembly piston-and-cylinder unit is attached at the approximate center of said push blade assembly.**<br><br>[6, 14] | Plain and ordinary meaning.<br><br>'950 Patent: Abstract; cols. 1:55-2:14; 3:4-9; 3:28-4:47; Figs. 1-10 & discussion thereof. | "approximate" renders the term indefinite.<br><br>Alternatively: "push blade assembly piston-and-cylinder unit is attached at a point halfway between the top and bottom edges and halfway between the left and right edges of the push blade assembly"<br><br>'330 Patent, Fig. 3 no. 56.<br><br>'950 Patent, Fig. 3 no. 56.<br><br>**Center**<br>"A point or place that is equally distant from the sides or outer boundaries of something; the middle: the center of a stage."<br>Source: center. American Heritage Dictionary of the English Language, Fifth Edition. Houghton Mifflin Harcourt Publishing Company. http://www.ahdictionary.com/word/search.html?q=center<br>"the midpoint of any line or figure, esp the point within a circle or sphere that is equidistant from any point on the circumference or surface"<br>Source: center. Dictionary.com. Collins English Dictionary – Complete & Unabridged 10th Edition. Harper Collins Publishers. http://dictionary.reference.com/browse/center<br><br>Maul Decl., ¶ 16. |

Defendants argue that "approximate" "renders the [claim term] indefinite [since o]ne skilled in the art would not be able to tell if a device practiced the claims at issue because the term 'approximate' is vague." (Defs.' Opening Brief 15:21–24.)

Plaintiff contends that "there is no requirement that the claims define the 'approximate center' with mathematical precision." (Pl.'s Opening Brief 22:10–11 (citing Hearing Components, Inc., 600 F.3d at 1367).) Plaintiff also argues that "[t]he Federal Circuit recognizes that 'words of approximation, such as "generally" and "substantially," are descriptive terms commonly used in patent claims to avoid strict numerical boundary to the specified parameter.'" (Id. 22:11-13 (quoting Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1310–11 (Fed. Cir. 2003)).) Plaintiff further contends that "Defendants' alternative construction . . . is at odds with the claim language because it reads 'approximate[]' completely out of the claim." (Id. 13:19–21.) Plaintiff also argued at the hearing that the Federal Circuit decision in Playtex Products, Inc. v. Procter & Gamble Co., 400 F.3d 901, 907 (Fed. Cir. 2005), in which the Federal Circuit upheld the trial court's decision not to construe the claim term "substantially flattened surfaces," supports Plaintiff's position that "approximate" need not be construed.

Here, Defendants' proposed construction eliminates the word "approximate" from the claims entirely. Given that other similar terms are "ubiquitously used in patent claims," Anchor Wall Sys., Inc., 340 F.3d at 1311, and given the context in which the word is used, Defendants' proposed construction is overly limiting and is not adopted. Further, the claim term neither fails for indefiniteness nor requires construction.

## IV. CONCLUSION

For the stated reasons, Defendants' proposed claim constructions are not adopted. Further, no disputed claim terms fail for indefiniteness. In addition, the following construction of "transport container" has been adopted: "a container for moving material from one geographic location to another," which is adopted.

Each of the disputed claim terms addressed in this ruling is not construed, with the exception of two claim terms, which are construed as follows:

(1) "said push blade assembly is adapted for compacting bulk material in said container" is construed as "said push blade assembly is adapted for compacting bulk material in the container for moving material from one geographic location to another";

(2) "said container packer being movable . . . between a retracted position on said transfer base and an extended position extending at least partially from said transfer base distal end" is construed as "said container packer being movable . . . between a retracted position at least partially on said transfer base and an extended position extending at least partially from said transfer base distal end."

**Dated:  September 6, 2013**

_____
**GARLAND E. BURRELL, JR.**
**Senior United States District Judge**